E-FILED
Friday, 30 March, 2012  04:11:43 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |  |
|---|---|---|
| DANIEL G. HEDGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-1026 |
| | ) | |
| ELDON KENNELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

This matter is currently before the court on the Defendants' Motion for Summary Judgment [#23]. The matter has been fully briefed by the parties. The Defendants' Motion [#23] is GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiff, Daniel Hedger, is currently an inmate within the Illinois Department of Corrections (IDOC). Plaintiff filed the instant complaint pursuant to 42 U.S.C. § 1983. The Court conducted a merit review and found the Plaintiff stated an arguable claim under the First Amendment and this Order is limited to addressing this issue and will not address the Religious Use and Institutionalized Persons Act. Specifically, the Plaintiff alleges his religious rights were violated when he requested to change his religion to Heathenery in September 2009, to Odinism in October 2009, and to Odinism-Asatru in August and October 2010, and all of his requests were denied for a history of frequent changes. As a result, the Plaintiff was unable to change his religion at Pontiac Correctional Center.

# FACTS

Plaintiff is currently an inmate in IDOC and was housed mainly at Pontiac Correctional center until April 27, 2011. Plaintiff first requested to change his religion on July 7, 2007, from Baptist to Al-Islam (Muslim). This was approved by Defendant Chaplain Kennell. Plaintiff's second request to change his religion was on March 4, 2009, when he requested to change his religion from Al-Islam (Muslim) to none and this request was approved. Plaintiff's third request to change his religion was on August 30, 2009, when he requested to change his religion from none to Al-Islam (Muslim) and this request was denied for attempting to change his religion during Ramadan. Plaintiff's fourth request to change his religion was on September 3, 2009, when he requested to change his religion from none to Heathenery, and this request was denied for a history of frequent changes. Plaintiff's fifth request to change his religion was on October 28, 2009, when he requested to change his religion from none to Odinism, and this request was denied for a history of frequent changes. Plaintiff's sixth request to change his religion was on August 15, 2010, when he requested to change his religion from none to Odinism-Asatru, and this request was denied for a history of frequent changes. Plaintiff's seventh request to change his religion was on October 28, 2010, when he requested to change his religion from none to Odinism-Asatru. This request was denied for a history of frequent changes and because it was suspected that the Plaintiff was being coerced to change his religion by other inmates.

Plaintiff also requested to be given the Halal diet, to participate in Ramadan feasts and services, and to receive various religious items while at Pontiac Correctional Center. Plaintiff's religion was changed to Odinism-Asatru on May 25, 2011. Plaintiff has changed his religion six times since 2002, and currently participates in an Odinism study group and feasts at

Pinckneyville Correctional Center. Odinism feasts were not available at Pontiac Correctional Center.

Defendant Lemke was the Assistant Warden of Operations at Pontiac Correction Center when the events giving rise to the Plaintiff's Complaint allegedly took place. Defendant Pierce was the Warden of Pontiac Correctional Center when the events giving rise to the Plaintiff's Complaint allegedly took place. Defendant Reed was the Warden of Programs at Pontiac Correctional Center when the events giving rise to the Plaintiff's Complaint allegedly took place. The Plaintiff claims Defendants Lemke, Pierce, and Reed violated his First Amendment rights because they were copied on the December 2, 2010, letter written by the Plaintiff.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant. Bartman v. Allis-Chalmers Corp., 799 F.2d 311, 312 (7th Cir.1986). Yet not every conceivable inference must be drawn, only reasonable inferences. Id.

The United States Supreme Court held that summary judgment is mandatory if there is no genuine issue as to any material fact for trial if, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The plaintiff must come forward with evidence of a specific factual dispute, evidence that would reasonably permit the finder of fact to find in plaintiff's favor on a material question; otherwise, the court must enter summary judgment against the plaintiff. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994); International Union of Operating Engineers v. Associated General Contractors, 845 F.2d 704, 708 (7th Cir. 1988).

## FIRST AMENDMENT RIGHTS

A prisoner has a First Amendment right to practice his/her religion subject to prison regulations that do not discriminate between religions and are reasonably related to legitimate penological objectives. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). The United States Supreme Court has established that "prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 482 U.S. at 349.

While inmates should be accorded a reasonable opportunity to practice their religious beliefs, the Seventh Circuit has acknowledged that "[p]rison administrators, like most government officials, have limited resources to provide the services they are called upon to administer." Al-Alamin v. Gramley, 926 F. 2d 680, 686 (7th Cir. 1991).

The Illinois Department of Corrections has promulgated regulations pertaining to the exercise of an inmate's religion. Committed persons are provided "reasonable opportunities to pursue their religious beliefs and practices subject to concerns regarding security, safety, rehabilitation, institutional order, space, and resources." 20 Ill. Admin. Code § 425.30(a).

Department regulations also address how an inmate may change his religious affiliation. An inmate desiring to change his religious affiliation must write to the facility's chaplain to

request the change. 20 Ill. Admin. Code § 425.30(h). "The facility chaplain may refuse to change the affiliation if it is determined that the change is being requested for other than religious reasons."

Here, Plaintiff requested to change his religious affiliation seven separate times while at Pontiac Correctional Center. The Plaintiff's religious affiliation has been changed six times since 2002. Some of the Plaintiff's requests to change his religion were denied due to a history of frequent changes pursuant to 20 Ill. Admin. Code § 425.30(h).

The Plaintiff was not able to participate in religious services or feasts due to the denial of his request to change his religious affiliation; however, Pontiac Correctional Center did not offer services or feasts to Odinism inmates even if they were officially affiliated with that religion. "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests." Kaufman v. McCaughtry, 419 F. 3d 678, 683 (7th Cir. 2005).

Plaintiff currently practices Odinism at Pinckneyville Correctional Center and describes the practice as a study group where the inmates discuss Odinism tenets and readings. Accordingly, not allowing the Plaintiff to switch his religion an unlimited number of times, was rationally related to the legitimate governmental objectives of conservation of limited resources and institutional security and Plaintiff's First Amendment claims fail as to all defendants.

Further, with regard to Defendant's Lemke, Pierce and Reed the plaintiff's claim also fails for lack of any personal involvement. "The doctrine of respondeat superior does not apply to §1983; thus to be held liable a defendant must be 'personally responsible for the deprivation of a constitutional right.'" Sanville v. McCaughtry, 266 F. 3d 724, 740 (7th Cir. 2001) (quoting Chavez v. Illinois State Police, 251 F. 3d 612, 651 (7th Cir. 2001). A defendant is personally

responsible "if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." Id at 652. "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." Id at 651.

Defendant Kennell was the Chaplain tasked with addressing inmates' requests for religious affiliation changes. Defendant Lemke was the Assistant Warden of Operations at Pontiac during the relevant time period. Defendant Pierce was the Warden at Pontiac during the relevant time period. Defendant Reed was the Assistant Warden of Programs at Pontiac during the relevant time period. The Plaintiff simply asserts liability on Defendants Lemke, Pierce, and Reed because they were copied on a letter from the Plaintiff regarding his religious affiliation request.

As personal involvement is an essential element to Plaintiff's case and Plaintiff cannot show Defendants Lemke, Pierce, and Reed were personally involved in denying Plaintiff's request to change his religion, Defendants Lemke, Pierce, and Reed are entitled to summary judgment on this basis as well.

## Conclusion

For the above-stated reasons, the Defendants' Motion for Summary Judgment is GRANTED.  This matter is now TERMINATED.

ENTERED: March 30, 2012              s/ James E. Shadid
                                     James E. Shadid
                                     United States District Judge